**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

SUCCESS SYSTEMS, INC., and
SMART C-STORES, LLC

Plaintiffs,

vs.                                                                        **CASE NO. 3:21-CV-1391-AVC**

CRS, INC.; SALE POINT, INC., D/B/A
LONGINO DISTRIBUTING, INC.; AND
SHIN HEUNG PRECISION CO., LTD

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT CRS, INC.'S MOTION TO COMPEL**
**AND FOR PROTECTIVE ORDER**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

NATURE OF THE CASE .................................................................................................... 1

    I.    The Parties' Background ................................................................................ 2

    II.   The Failed Project ........................................................................................... 4

    III.  The Parties' Dispute ....................................................................................... 5

         A.    Success's Harassment Campaign ....................................................... 5

         B.    Success's Baseless Claims .................................................................. 6

    IV.  The Discovery Disputes .................................................................................. 6

ITEMS OF DISCOVERY SOUGHT AND OPPOSED .......................................................... 8

    I.    The Court should protect CRS from producing confidential information and trade secrets unless Success first defines its "Confidential Information" with reasonable specificity. .................................................... 9

    II.   The Court should compel Success to describe its "Confidential Information" and how it was allegedly misappropriated. ...................................... 14

    III.  The Court should compel Success to produce documents relating to its software, Smokin' Rebates. ............................................................................ 18

    IV.  The Court should compel Success to describe the facts and subject matters known by persons with relevant knowledge of the parties' claims and defenses. ...................................................................................................... 21

    V.   The Court should compel Success to describe the alleged "unfair and deceptive business practices of CRS." ......................................................... 22

    VI.  The Court should compel Success to produce information and documents relating to its alleged damages. .................................................................... 23

    VII.  The Court should compel Success to describe the facts supporting its affirmative defenses. .................................................................................... 24

    VIII.  The Court should compel Success to describe the facts supporting its denials of CRS's Requests for Admission. ..................................................... 25

    IX.  The Court should compel Success to identify the documents it refers to in its interrogatory answers by specific document numbers. .................................... 27

    X.   The Court should award CRS's reasonable expenses including attorneys' fees incurred in making this Motion. ............................................................ 28

CONCLUSION ................................................................................................................. 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Belparts Grp., N.V. v. Belimo Automation AG*,
    2022 WL 1223018 (D. Conn. Apr. 26, 2022) .........................................................................19

*In re Bilzerian*,
    190 B.R. 964 (Bankr. M.D. Fla. 1995) ..................................................................................16

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
    2022 WL 970089 (D. Conn. Mar. 31, 2022) ...........................................................................8

*Crawford-El v. Britton*,
    523 U.S. 574 (1998).................................................................................................................9

*Daval Steele Products v. M/V Fakredine*,
    951 F.2d 1357 (2d Cir. 1991)..................................................................................................8

*DeRubeis v. Witten Techs., Inc.*,
    244 F.R.D. 676 (N.D. Ga. 2007)............................................................................10, 11, 12, 13

*U.S. ex rel. Englund v. Los Angeles Cnty.*,
    235 F.R.D. 675 (E.D. Cal. 2006) ..........................................................................................17

*Equal Rts. Ctr. v. Post Props., Inc.*,
    246 F.R.D. 29 (D.D.C. 2007).................................................................................................16

*Huminski v. Stop & Shop Supermarket Co.*,
    2017 WL 2779468 (D. Conn. June 27, 2017).........................................................................20

*Luck v. McMahon*,
    2021 WL 4248887 (D. Conn. Sept. 17, 2021) .......................................................................17

*Marchello v. Chase Manhattan Auto Fin. Corp.*,
    219 F.R.D. 217 (D. Conn. 2004).............................................................................................8

*In re Master Key*,
    53 F.R.D. 87 (D. Conn. 1971).................................................................................................17

*McCullough v. World Wrestling Ent., Inc.*,
    2018 WL 2932354 (D. Conn. Feb. 22, 2018), *report and recommendation*
    *adopted*, 2018 WL 4697285 (D. Conn. July 22, 2018)..........................................................29

*Metavante Corp. v. Emigrant Sav. Bank*,
    2008 WL 4722336 (E.D. Wis. Oct. 24, 2008) .......................................................................20

*Power Conversion, Inc. v. Saft Am., Inc.*,
1985 WL 1016 (S.D.N.Y. May 1, 1985) ................................................................12

*Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*,
2012 WL 3113162 (D. Conn. July 31, 2012) .......................................................13

*Pulsecard, Inc. v. Discover Card Servs., Inc.*,
168 F.R.D. 295 (D. Kan. 1996)...............................................................................17

*Ray v. Allied Chem. Corp.*,
34 F.R.D. 456 (S.D.N.Y. 1964) ...............................................................................10

*Schiavone v. Ne. Utils. Serv. Co.*,
2010 WL 382537 (D. Conn. Jan. 27, 2010)...........................................................20

*Sellitto-Taylor v. McLean Affiliates, Inc.*,
2021 WL 950323 (D. Conn. Mar. 12, 2021) .............................................16, 22, 24

*This, LLC v. Jaccard Corp.*,
2017 WL 547902 (D. Conn. Feb. 9, 2017) ......................................................28, 29

*Trueman v. N.Y. State Canal Corp.*,
2010 WL 681341 (N.D.N.Y. Feb. 24, 2010) .........................................................16

*Xerox Corp. v. IBM Corp.*,
64 F.R.D. 367 (S.D.N.Y.1974) ...............................................................................11

## Other Authorities

Local Rule 37 ..................................................................................................................9, 28

Fed. R. Civ. P. 26 ......................................................................................................8, 9, 28

Fed. R. Civ. P. 33 ......................................................................................8, 16, 18, 29, 30

Fed. R. Civ. P. 34 ....................................................................................................8, 21, 29

Fed. R. Civ. P. 36 .............................................................................................................26

Fed. R. Civ. P. 37 ......................................................................................................8, 9, 28

## INTRODUCTION

Plaintiffs Success Systems, Inc. and Smart C-Stores, LLC (collectively, "Success") allege claims asserting that Defendants CRS, Inc. ("CRS") and Shin Heung Precision Co., Ltd. ("Shin Heung") have stolen Success's trade secrets and disclosed its confidential information. These are serious accusations. In discovery, however, Success refuses to describe the information that forms the basis for its trade secret misappropriation and non-disclosure claims with reasonable specificity. Instead, Success expects CRS to first produce confidential information and trade secrets, in the apparent hope it can backfill its empty claims using others' confidential information and trade secrets.

Success has never described its allegedly misappropriated information with enough specificity to ascertain the nature of its claims. Success failed to describe the information prior to commencing its lawsuit. It then failed to describe the information in the Second Amended Complaint (the "Complaint"). Now, it has failed to describe the information in discovery.

The Court should compel Success to fully answer CRS's interrogatories asking it to describe with reasonable specificity the information that forms the basis for its claims, and unless Success does so, the Court should protect CRS from producing confidential information and trade secrets. Additionally, the Court should compel Success to remedy its deficient discovery responses by producing relevant information and documents regarding its software, persons with knowledge of relevant facts, unfair trade practices claim, alleged damages, affirmative defenses, denials of CRS's requests for admission, and Success's referenced but unspecified business records.

## NATURE OF THE CASE

This is a dispute about Success's efforts to interfere with CRS's business by slandering its products and claiming to own the software distributed by CRS and developed by Shin Heung.

1

CRS and Success undertook a project to connect their respective products and services. (Dec. David Sanders, ECF No. 63-2 ¶ 7.) The project failed through no fault of CRS. (*Id.* ¶ 11.) Instead of simply moving on, Success began a retaliation campaign by harassing distributors, dealers, and end users of CRS's products with defamatory statements and threats of vexatious litigation. (*Id.* ¶ 13; ECF Nos. 63-23–35.) In furtherance of its campaign, Success commenced this action claiming to own the software distributed by CRS, alleging it supplied "changes" to the software by sharing its unspecified "Confidential Information," and that CRS has somehow misappropriated this unidentified information into the software, which is impossible because CRS is not the software's developer. (ECF No. 27 ¶ 51; Dec. Sanders ¶ 3.) The following provides a summary of the parties' background, their failed project, and their disputes.

## I.   The Parties' Background

CRS is the exclusive United States importer and wholesale distributor of SAM4s brand electronic cash registers ("SAM4s"), which are a popular brand of registers used by retailers in 42 countries. (Dec. Sanders, ECF No. 63-2 ¶ 2.) SAM4s are manufactured in South Korea by Shin Heung, who is the exclusive developer and owner of their operating system, software, and technology, including the SAM4s Sam4POS software (the "Software"). (*Id.* ¶ 3.)

As a distributor of SAM4s, not their manufacturer or developer, CRS does not have possession, custody, or control over the Software's source code. (*Id.*) Shin Heung licenses the Software in compiled, executable object code form to CRS, who sub-licenses it to users through the End User License Agreement (the "EULA") they must accept. (*Id.*) The EULA provides the Software, including "any fixes, updates, modifications and enhancements" and "its source code, structure, sequence and organization, and any other information related thereto," "belong to CRS

or its licensors," and "constitute confidential information and valuable trade secrets of CRS and its licensors." (ECF No. 63-3 at 3, 5.)

Neither CRS nor Shin Heung sell SAM4s directly to retailers. (Dec. Sanders, ECF No. 63-2 ¶ 4.) Instead, CRS buys them from Shin Heung and then distributes them to its network of dealers and distributors, like former Defendant Sale Point, Inc. d/b/a Longino Distributing, Inc. ("Sale Point"). (*Id.*) CRS's dealers and distributors in turn sell SAM4s to retailers, along with licenses to use the Software subject to the EULA, and provide related support services. (*Id.*)

Success was one such dealer. (*Id.* ¶ 5.) Success purchased approximately 27 SAM4s from Sale Point or its predecessor, each including licenses to use the Software subject to the EULA, sold them to approximately 14 retailers, and provided support services in setting up and operating them. (*Id.*)

Success additionally offers a "cloud-based" software service called "Smokin' Rebates," which purports to automate the process retailers use to report data about their sales of tobacco products to tobacco manufacturers and collect rebate payments from them. (*Id.* ¶ 6.) Retailers use their registers to remotely connect to Success's network servers and upload their sales data to Smokin' Rebates, which then remotely "compiles and submits" this data on a weekly basis to tobacco manufacturers, who process and pay their rebates to the retailers. (*Id.*)

Smokin' Rebates requires an "Internet connection and a compatible point-of-sale terminal," and to promote such compatibility, Success claims it is "adding POS registers to our offering," listing several "compatible" terminal brands. (ECF No. 63-19 at 5.) Recently, Success announced its entry to the hardware market by offering its own alternative register, "PlatformPOS," to compete with SAM4s. (ECF No. 63-18 at 2.)

## II.     The Failed Project

In 2019, Success solicited CRS about a project to enable retailers using SAM4s to connect to Smokin' Rebates. (Dec. Sanders, ECF No. 63-2 ¶ 7.) On or about June 25, 2019, CRS provided Success with two free SAM4s registers for testing purposes, each including a "dealer license" that required Success to accept the EULA. (*Id.* ¶¶ 7, 10; ECF No. 63-3 at 3.) Success and CRS then entered into a Non-Disclosure Agreement (the "NDA") on or about July 15, 2019, to preserve the confidentiality of information exchanged during the project. (Dec. Sanders, ECF No. 63-2 ¶ 7.) Shin Heung is not a party to the NDA. (*Id.*)

As Success was aware, in order to connect SAM4s with Smokin' Rebates, Shin Heung, as the Software's exclusive developer, would need to create a custom connector application for the Software, which would allow SAM4s to remotely connect to Success's network server operating the cloud-based Smokin' Rebates service. (*Id.* ¶ 8.) Success communicated the interface specifications needed to connect SAM4s with Smokin' Rebates, but it did not, and could not, have authored the custom connector application because it does not have access to the Software's source code. (*Id.*) To verify the custom connector application's functionality, Success merely tested the Software, solely in its compiled, executable object code form, with Smokin' Rebates. (*Id.*)

The parties worked for over a year in attempt to connect SAM4s to Smokin' Rebates, without success, because Smokin' Rebates and its loyalty function was incomplete, dysfunctional, and CRS found it impossible to do business with Success's erratic and volatile CEO, Scott Tarlow. (*Id.* ¶ 11.) CRS informed Success it was ending the effort to connect SAM4s to Smokin' Rebates and its loyalty function. (*Id.* ¶ 12.) Shin Heung then deleted the entirety of the custom connector application it authored to connect SAM4s to Smokin' Rebates and its loyalty function because it could serve no other purpose. (*Id.*)

4

### III.    The Parties' Dispute

In attempt to coverup the shortcomings of Smokin' Rebates and interfere with CRS's business relationships, Mr. Tarlow began slandering the quality and performance of SAM4s to dealers, distributors, and end users, falsely claiming they were defective, Success's "technology is embedded" in them, and threatening vexatious litigation, which Success followed through with by commencing this action. (*Id.* ¶ 13.) The following sets forth, in part, the facts of Success's harassment campaign and its baseless claims.

**Success's Harassment Campaign**

Over a period of months, Mr. Tarlow sent correspondence to CRS's distributors, dealers, and end users of SAM4s falsely claiming that Success's "technology is embedded" in them and that they were "fragile;" "defective;" have unresolved "logic error(s)," causing "damages to all users," and have "Major Data discrepancies;" "unresolved SAM4S software issues;" "a systemic issue for all SAM4S 630/600 and/or software products ever installed;" "do not function;" and do "not work as represented." (ECF Nos. 63-23, -26–34.) Mr. Tarlow threatened "to start releasing or [sic] test findings to distributors so they too are aware of the problems we are encountering" so that "sales and confidence in CRS and SAM4S will certainly collapse" because such "relationships are fleeting." (ECF Nos. 63-26, -27.)

Mr. Tarlow's correspondence also included threats of vexatious litigation, claiming to "run adversaries out of business, or cost them a lot of money," including "significant and perhaps crushing cost." (ECF Nos. 63-24 at 2, 63-21 at 2.) Mr. Tarlow threatened: "If you doubt my resources you might want to read this [hyperlink]," and "[l]itigation always comes with a lot of unintended consequences," including "your borrowing is curtailed," "business disappears," and an "out of state tax audit is started." (ECF No. 63-29 at 2.) Success's harassment campaign is further

detailed in CRS's Counterclaims, the Declaration of David Sanders, and its Exhibits F–R. (Dec. Sanders, ECF No. 63-2 ¶ 13; ECF Nos. 32, 63-23–35.)

**Success's Baseless Claims**

Prior to its lawsuit, Success informed CRS of its claim that its "IP" was somehow included in the SAM4s "firmware." (ECF No. 63-27 at 2.) In response, CRS's counsel repeatedly asked Success's counsel to identify "[w]hat intellectual property of Success Systems is included in the SAM4POS software" and "specify what proprietary information of Success Systems it believes is in the software." (ECF No. 63-6 at 7; ECF No. 63-7 at 3, 6.) Success refused to do so. (*Id.*)

Success instead filed this lawsuit, in which it alleges claims against CRS and Shin Heung for trade secret misappropriation, unfair trade practices, breach of contract, and unjust enrichment, all of which arise from its allegation that its unspecified "Confidential Information" is somehow being misused. (ECF No. 27 ¶¶ 51, 76–98, 107–116.) Success vaguely and limitlessly alleges it "supplied CRS with its Confidential Information, which included over fifty (50) unique, confidential, proprietary changes to the SAM4s 630/6600 Software as well as other intellectual property related to its proprietary tobacco rebate reporting solution (hereinafter 'Confidential Information')." (ECF No. 27 ¶ 51.) Even in discovery, however, Success still has yet to describe its "Confidential Information" with any specificity.

## IV.    The Discovery Disputes

In discovery, CRS again asked Success in a series of interrogatories to describe its "Confidential Information" with reasonable specificity and how it was allegedly misappropriated. (Ex. 1 at 7–9 (Interrogatory Nos. 9–11).) Success responded by merely referring to a spreadsheet it created as a purported "summary of the unique, proprietary changes as referenced in the Second Amended Complaint." (*Id.* at 8.)

The spreadsheet is incomprehensible, and it is impossible to understand anything about Success's claims from it. It has eight tabbed sub-sheets and what appears to be incomplete portions and images of emails copied and pasted into over 1,000 rows. (Ex. 5.) It is laden with typos, meaningless terms, incomplete sentences, and external references. (*Id.*) It does not answer CRS's interrogatories by describing Success's "Confidential Information" with any specificity. (*Id.*)

CRS's counsel sent a detailed letter to Success's counsel about Success's discovery deficiencies. (Ex. 6.) Counsel met and conferred via telephone on multiple occasions and Success agreed to "specifically reference documents by Bates number (once said documents are produced) and/or supplement its responses with more information," "provide additional information" for certain interrogatories, and "not seek compliance with these requests [relating to CRS's confidential information and trade secrets] until after it has produced the summary [spreadsheet]." (Ex. 7 at 1–2; Dec. Henry Pfutzenreuter ¶ 2–4.) Besides the purported "summary" spreadsheet, however, Success has not fully supplemented its answers with specifically referenced documents or the requested information about its alleged "Confidential Information."

Success also failed to remedy many other discovery deficiencies and its supplemented interrogatory answers did not include additional information as it agreed to provide. It refused to produce documents relating to its software, Smokin' Rebates, so that CRS can assess and defend Success's claim it has somehow been misappropriated. (Ex. 2 at 12 (Request Nos. 33–36).) It produced no information or documents regarding its claim for damages "in excess of $3,000,000." (Ex. 4 (Success's Initial Disclosures); Ex. 1 at 15 (Interrogatory No. 15); Ex. 2 (Request No. 45).) It has not adequately described the information and subject matters known by potential witnesses, (Ex. 1 at 3 (Interrogatory No. 1)), the facts supporting its unfair trade practices claim (*id.* at 9–10 (Interrogatory No. 14)), the facts supporting its affirmative defenses (*id.* at 11–12 (Interrogatory

No. 19)), or the facts supporting its denials of CRS's Requests for Admission (*id.* at 12–13 (Interrogatory No. 20)). And many of its interrogatory answers still refer to categories of documents without reference to specific document numbers, making it impossible for CRS to ascertain the requested information. (Ex. 1 at 7, 9–10 (Interrogatory Nos. 8, 13–16).)

### ITEMS OF DISCOVERY SOUGHT AND OPPOSED

"The scope of permissible discovery is broad." *Marchello v. Chase Manhattan Auto Fin. Corp.*, 219 F.R.D. 217, 218 (D. Conn. 2004). Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" and "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." "'Relevance for discovery purposes is an extremely broad concept which "has been construed . . . to encompass any matter that bears on, or reasonably could lead to other matters that could bear on, any issue that is or may be in the case."' . . . '[R]elevance for the purpose of discovery is broader in scope than relevance for the purpose of the trial itself.'" *Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 2022 WL 970089, at *2 (D. Conn. Mar. 31, 2022). In the Second Circuit, the "obviously broad [discovery] rule is liberally construed." *Daval Steele Products v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991).

Under Rule 37(a), "a party may move for an order compelling disclosure or discovery," including when "a party fails to answer an interrogatory submitted under Rule 33" or "a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." A party may also move for a protective order under Rule 26(c)(1), upon which "[t]he court may, for good cause, issue an order . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." "Rule 26 vests the trial judge with broad discretion to tailor

discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598, (1998).

The Court should issue an order compelling Success to provide full interrogatory answers and document production under Rule 37(a), protecting CRS from producing confidential information and trade secrets under Rule 26(c)(1), and awarding CRS's reasonable expenses incurred in making this Motion under Local Rule 37. The following sets forth the discovery items sought and opposed and the reasons the Court should compel and protect their disclosure.

**I.     The Court should protect CRS from producing confidential information and trade secrets unless Success first defines its "Confidential Information" with reasonable specificity.**

Success issued several requests for CRS to produce documents that would include confidential information and trade secrets:

> **<u>Request No. 9:</u>** Documents or communications between Shin Heung and CRS relating to logic errors or other defects, problems, or issues with the SAM4s 630/6600 registers.
>
> **<u>Request No. 16:</u>** Documents and communications relating to the integration of Success' rebate reporting and loyalty rebate reporting programs into the SAM4s software.
>
> **<u>Request No. 19:</u>** All Skype recordings and records of any Skype meetings between or amongst CRS, Sale Point (or its predecessor), Bandyworks, LLC, NBS Systems and/or Shin Heung.
>
> **<u>Request No. 20:</u>** Documents and communications relating to any changes made to any version of the SAM4s software using any information provided by Success or as a result of any information provided by Success.
>
> **<u>Request No. 21:</u>** Documents and communications relating to any changes made to any version of the SAM4s software after May 24, 2021.
>
> **<u>Request No. 23:</u>** Documents and communications between CRS and Bandyworks, LLC relating to Success or any Success product or program between January 1, 2019 and the present.

**Request No. 24:** Documents and communications between CRS and Bandyworks, LLC relating to any tobacco rewards or tobacco rebate program.

**Request No. 28:** Documents and communications reflecting all modification or changes made to the SAM4s 630/660 code to accommodate the Bandyworks, LLC tobacco rewards or tobacco rebate program to operate.

(Ex. 9 at 4, 12, 18–19, 20–22, 23–25, 27–28.) These requests seek documents containing confidential information and trade secrets relating to CRS's business, its service provider BandyWorks, LLC, and Shin Heung's software and specifications for SAM4s. Among other objections, CRS objected and withheld documents containing confidential information and trade secrets unless Success first defines with reasonable specificity its "Confidential Information" and the alleged trades secrets that forms the basis for its claims. (*Id.*)

"Trade secret cases present unique and difficult problems with respect to the timing and scope of discovery." *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 679 (N.D. Ga. 2007). There are at least four reasons courts protect defendants from disclosure of confidential information and trade secrets unless plaintiffs alleging misappropriation claims first define their trade secrets with reasonable specificity, all of which apply to this case.

"First, if discovery on the defendant's trade secrets were automatically permitted, lawsuits might regularly be filed as 'fishing expeditions' to discover the trade secrets of a competitor." *Id.*

> [T]he circumstance that a litigant in his complaint alleges that he disclosed confidential and secret processes to a defendant, which the latter in turn denies, does not automatically entitle the plaintiff to obtain disclosure of the alleged offending processes in aid of plaintiff's pretrial discovery—otherwise it would be a simple matter to obtain one's trade secret by the mere assertion of a claim. The end result of disclosure, where ultimately it develops that the asserted claim is without substance, may be so destructive of the interests of the prevailing party that more is required than mere allegation to warrant pretrial disclosure.

*Ray v. Allied Chem. Corp.*, 34 F.R.D. 456, 457 (S.D.N.Y. 1964). In this case, Success recently announced its plans to enter the electronic register market and compete with CRS and Shin Heung.

(ECF No. 63-18 at 2.) Prior to commencing this lawsuit, Success forecasted its fishing expedition and unfair competitive practices by threatening vexatious litigation, claiming to "run adversaries out of business, or cost them a lot of money," including "significant and perhaps crushing cost," specifically referring to its sordid litigation history involving other trade secret misappropriation claims. (ECF Nos. 63-21 at 2, 63-24 at 2, 63-29 at 2; Ex. 1 at 11.)

"Second, until the trade secret plaintiff has identified the secrets at issue with some specificity, there is no way to know whether the information sought is relevant." *DeRubeis*, 244 F.R.D. at 680.

> [A] defendant is entitled to know the bases for plaintiff's charges against it. The burden is upon the plaintiff to specify those charges, not upon the defendant to guess at what they are. . . . Clearly until this is done, neither the court nor the parties can know, with any degree of certainty, whether discovery is relevant or not.

*Xerox Corp. v. IBM Corp.*, 64 F.R.D. 367, 371 (S.D.N.Y.1974). Success's alleged "Confidential Information" presents a moving target. It might be the alleged "changes" to the Software that Success falsely claims it supplied based on "issues it had identified internally and from customer complaints." (ECF No. 27 ¶¶ 34, 51; Ex. 1 at 7–8; Ex. 5.) Or it might be the "Smokin' Rebates Code" that Success falsely claims it sent to CRS and Shin Heung. (Ex. 1 at 13.) Alternatively, it might be "code" for the Software that Success falsely claims it "authored." (ECF No. 27 ¶¶ 40, 45; Ex. 1 at 13.) It might also be Success's "API Reference Document" specifications it falsely claims "SAM4s use . . . to connect to Bandyworks and other tobacco rebate or loyalty reporting programs." (Ex. 1 at 13; Ex. 5.) It is impossible to tell based on the myriad, vague, and non-exhaustive ways Success has alleged and attempted to describe its "Confidential Information" as including "over fifty (50) unique, confidential, proprietary changes to the SAM4s 630/6600 Software as well as other intellectual property related to its proprietary tobacco rebate reporting solution." (ECF No. 27 ¶ 51.)

"Third, it is difficult, if not impossible, for the defendant to mount a defense until it has some indication of the trade secrets allegedly misappropriated." *DeRubeis*, 244 F.R.D. at 681. This is because typically "a trade secret defendant will defend the claim by showing that it does not use the claimed secret or that the information is in fact not secret," and so "[u]ntil the defendant knows what information is at issue, it cannot attempt to rebut the plaintiff's charges of misappropriation." *Id.* If, on one hand, Success's "Confidential Information" is "changes" to the Software based on "issues it had identified internally and from customer complaints," (ECF No. 27 ¶ 34), they simply cannot be Success's secret and the EULA provides they are owned by CRS and its licensor, Shin Heung, (ECF No. 63-3 at 3, 5). If, on the other hand, Success's "Confidential Information" is some type of "code" it falsely claims it "authored" or "sent," whether for Smokin' Rebates or the Software, then Success must specifically identify and produce the code it authored or sent and describe how it is being misappropriated. (Ex. 1 at 13.) CRS cannot even begin to defend itself from Success's misappropriation claims until Success defines its "Confidential Information" with reasonable specificity.

Fourth, "the risk arises that a plaintiff, seeking to disadvantage the defendant competitor, might make broad and unspecified charges of misappropriation, obtain full disclosure of the defendant's processes, and then tailor its own claims accordingly." *Power Conversion, Inc. v. Saft Am., Inc.*, 1985 WL 1016 at *2 (S.D.N.Y. May 1, 1985). This is exactly what Success is trying to do in this case. It has advanced a vague and limitless definition of its alleged "Confidential Information" and produced incomprehensible, non-responsive, and non-exhaustive answers to CRS's interrogatories seeking reasonable specification of Success's alleged trade secrets. (ECF No. 27 ¶ 51; Ex. 5; Ex. 2 at 12 (Request Nos. 33–36).) As of today, CRS has no more knowledge about what Success's alleged trade secrets are than it did when this lawsuit began. Yet, Success

expects CRS to first produce confidential information and trade secrets so Success's "potential experts . . . can perform their analysis." (Ex. 8 at 2.) Success's intent is clear; it wants to abuse the discovery process so as to "mold its cause of action around the discovery it receives." *DeRubeis*, 244 F.R.D. at 681.

Magistrate Judge Fitzsimmons agreed with the forgoing reasoning in *Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, 2012 WL 3113162 (D. Conn. July 31, 2012) (citing *DeRubeis*, 244 F.R.D. at 681). The court found "good reason to require plaintiff to describe with reasonable specificity the trade secrets that form the basis of its claim" and "agree[d] that defendants are entitled to an explanation of plaintiff's theory of the case before plaintiff gets the benefit of defendants' discovery." *Id.* at *2. As a result, the court granted the defendant's motion for a protective order and ordered the plaintiff "to provide defendants with a description that defines with reasonable specificity the alleged trade secrets which form the basis of its misappropriation claim." *Id.*

Likewise in this case, the Court should protect CRS from producing confidential information and trade secrets, including in response to Request Nos. 9, 16, 19–21, 23, 24, and 28, unless Success first defines its "Confidential Information" with reasonable specificity by fully answering CRS's Interrogatory Nos. 9–10 and 17 as set forth below. Success already agreed to "not seek compliance with [its] requests until after it has produced the summary [spreadsheet]." (Ex. 7.) Now that Success has produced its "summary" spreadsheet, it says it must "push for production from CRS before [Success's potential experts] can perform their analysis." (Ex. 8 at 2.) Success's "summary" spreadsheet, however, is incomprehensible, non-responsive, and does not define its "Confidential Information" with any specificity.

II.     **The Court should compel Success to describe its "Confidential Information" and how it was allegedly misappropriated.**

CRS issued several interrogatories to Success seeking reasonable specification of the alleged trade secrets and "Confidential Information" that forms the basis for Success's misappropriation claims:

**INTERROGATORY NO. 9:**

Describe each of the "over fifty (50) unique, confidential, proprietary changes" you allege you supplied to CRS or that CRS is using in Paragraphs 51 and 61 of the Second Amended Complaint, including by describing the purpose and nature of each change, identifying the date you supplied each change to CRS, the date CRS implemented each change, the version number of the SAM4s that first included each change, all communications, documents, and persons relating to each change, and the name, address, or location of each change in the SAM4s software, firmware, directory tree, source tree, library files, configuration files, database, or source code.

**INTERROGATORY NO. 10:**

Describe all of the "Confidential Information" you allege you supplied to CRS in Paragraphs 51 and 91 of the Second Amended Complaint, including by describing the nature and purpose of each piece of "Confidential Information," by identifying the date you supplied each piece of "Confidential Information" to CRS, the name and addresses of each person who sent and received each piece of "Confidential Information," all communications transmitting each piece of "Confidential Information" to CRS, and all documents containing the "Confidential Information" that you sent to CRS.

**INTERROGATORY NO. 11:**

Describe all facts supporting your contention that your "Confidential Information" was misappropriated, misused, transferred, or not returned, destroyed, or removed as alleged in Paragraphs 61 to 65, 82, and 92 to 94 of the Second Amended Complaint, including by identifying all documents and communications supporting your contention, each piece of "Confidential Information" that you contend was misappropriated, misused, transferred, or not returned, destroyed, or removed, the persons or "third-party" who did so, when they did so, and by describing how they did so.

**INTERROGATORY NO. 17:**

Describe the "technology" that you stated was "embedded" in the SAM4s in your email dated February 23, 2021, including by identifying all documents and communications relating to your embedded technology, the type of technology, the date you developed it, the date it was embedded in the SAM4s, the persons who embedded it, and by describing how it was embedded, the functionality it provided, and your copyright or intellectual property interest in it.

(Ex. 1 at 7–9, 11.) Success's answers provided no information and instead merely referred to "its allegations in the Second Amended Complaint," unspecified "documents and communications supporting its claims regarding the misappropriation of its trades secrets and confidential information," and "a summary of the unique, proprietary changes as referenced in the Second Amended Complaint." (*Id.*)

The only record Success referenced with enough specificity to locate was an incomprehensible, non-responsive, and voluminous spreadsheet. (*Id.* at 8; Ex. 5.) The spreadsheet is devoid of responsive information, using incomplete sentences, meaningless terms, and references to other unspecified emails, items, cloud storage sites, attachments, and documents. (Ex. 5 (referring to unspecified "email chains," portions of "Email Header," "Email Body," and "Attachment," "API Reference Document," "Reference-Sheet-Issue-Sheet," numerous numbered issues in "CRS tracking System," and external "Google Drive Link[s]," among others).) As a result of these external and unspecified references, the potential scope of Success's "Confidential Information" remains limitless. Moreover, the spreadsheet's format, including numerous tabbed sub-sheets and rows, not only makes it impossible to ascertain the requested information, it also makes it impractical to print or use as an exhibit in any future proceeding. (*Id.*)

Since the spreadsheet is a mere "summary," it does not appear to include the actual "Confidential Information" Success claims it supplied. (*Id.*) For example, it includes no software code, despite the fact Success's interrogatory answers claim it "authored critical portions of the

referenced code" and "sent CRS and Shin Heung portions of Smokin' Rebates Code," which it has failed and refused to produce. (Ex. 1 at 13.) It also does not include any information about the nature and purpose of the "changes" or "Confidential Information" allegedly supplied by Success, the date they were supplied, the persons who supplied them, the communications or documents transmitting them, or any details about how they were misappropriated. (Ex. 5.)

Success's attempt to answer Interrogatory Nos. 9–11 and 17 by referring to a spreadsheet it created as a "summary" response does not comply with its obligations under Rule 33. (Ex. 1 at 8.) "Answers to interrogatories that incorporate other documents by reference are strongly disfavored. Reference to depositions, other answers to the interrogatories, other document production, the complaint itself, or any other documents are improper and thus unresponsive." *Sellitto-Taylor v. McLean Affiliates, Inc.*, 2021 WL 950323 at *3 (D. Conn. Mar. 12, 2021) (quoting *Trueman v. N.Y. State Canal Corp.*, 2010 WL 681341 at *3 (N.D.N.Y. Feb. 24, 2010) and *Equal Rts. Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 34 (D.D.C. 2007)). "Rule 33 does not allow a party to answer an interrogatory by providing a document; rather, the rule states that each question must be 'answered separately and fully in writing under oath.'" *Equal Rts. Ctr.*, 246 F.R.D. at 34.

While Rule 33(d) permits a party to refer to its "business records" in limited situations, "before the answers may be furnished with reference to business records, the records must in fact be 'business records.'" *In re Bilzerian*, 190 B.R. 964, 965 (Bankr. M.D. Fla. 1995). Success's "summary" spreadsheet created for the purpose of answering CRS's interrogatories is obviously not a business record. (Ex. 1 at 8.)

Regardless, Rule 33(d) requires that "the burden of deriving or ascertaining the answer will be substantially the same for either party." Its use "is well-suited to reply to inquiries of an

intensely objective nature" and "is not appropriate where interrogatories pose questions of fact or mixed questions of law and fact [that] require the exercise of particular knowledge and judgment on the part of the responding party." *Luck v. McMahon*, 2021 WL 4248887 at *30 (D. Conn. Sept. 17, 2021). Here, CRS has no way of ascertaining what Success contends is its "Confidential Information" from its incomprehensible and voluminous spreadsheet because it does not describe anything that could even arguably be considered confidential or a trade secret. Rule 33(d) "is not a procedural device for avoiding the duty to give information," *In re Master Key*, 53 F.R.D. 87, 90 (D. Conn. 1971), and cannot be used to force the requesting party to "ferret the information from various documents" and speculate about what might be responsive. *U.S. ex rel. Englund v. Los Angeles Cnty.*, 235 F.R.D. 675, 681 (E.D. Cal. 2006).

Moreover, Rule 33(d) requires the responding party to "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." As a result, references to business records cannot be qualified as non-exhaustive or refer to other unspecified documents, as "[t]he answer must specify, without qualification, which documents contain the answer" or else it "makes the list non-specific" and "does not qualify as an election to produce business records." *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 305 (D. Kan. 1996). Success's spreadsheet contains numerous external references to unspecified documents that CRS cannot readily identify and locate, making Success's answers non-specific and limitless. (Ex. 5.)

Success's perfunctory objections to Interrogatory Nos. 9–11 and 17 have no merit. (Ex. 1 at 7–9, 11.) They are not vague. They seek reasonably specific descriptions of the "Confidential Information" alleged in the Complaint and identification of supporting objective information such as dates, persons, documents, and communications. Success's alleged "Confidential Information"

is obviously relevant and it cannot be unduly burdensome for Success to produce in discovery what it will need to establish as an element of its misappropriation claims.

The Court should compel Success to provide full answers to Interrogatory Nos. 9–11 and 17. The Court should also compel Success to provide its answers "separately and fully" within its written and signed "Answers and Objections" under Rule 33(b), in a reasonable and complete format usable as an exhibit in future proceedings, and without external references to other documents unless they comply with Rule 33(d).

**III.     The Court should compel Success to produce documents relating to its software, Smokin' Rebates.**

CRS issued several requests for Success to produce documents relating to Smokin' Rebates, including its software, source code, integration, development, and project management records:

**REQUEST NO. 33:**

Your software, programs, or applications for Smokin' Rebates, including their source code, source code control system files, software configuration management files, version tracker files, program files, library files, configuration files, and compiling files.

**REQUEST NO. 34:**

All documents relating to any project management, collaboration, development, or issue tracking software, tools, applications, programs, or products you used to provide, develop, create, test, integrate, implement, troubleshoot, administer, or manage Smokin' Rebates, such as Jira, Slack, Trello, Gitlab, Basecamp, Asana, MS Project, Wrike, Salesforce, SharePoint, or the like, including exports, reports, logs, databases, and channel records of any communications, messages, conversations, notes, posts, files, comments, action items, events, or other data relating to the development, testing, implementation, integration, performance, functionality, operation, or use of Smokin' Rebates.

**REQUEST NO. 35:**

All documents relating to the development, testing, implementation, integration, performance, functionality, operation, or use of Smokin' Rebates, including agile

project materials, product roadmaps, acceptance criteria, development sprints, user stories, backlogs, burn down charts, use cases, root cause analysis, product requirement documents, design and architecture documents, testing, all other similar user experience design documentation, and all communications relating to them.

**REQUEST NO. 36:**

All documents relating to project management, project planning, and process documentation for the development, testing, implementation, integration, performance, functionality, operation, or use of Smokin' Rebates, including go live checklists, needs analysis, project tracking documents, deployment processes, protocols, plans, reports, metrics, working papers, standards, schedules, milestones, resource allocations, work estimates, work assignments, planning meetings, adjustments thereto, and all communications relating to them.

(Ex. 2 at 12.) Success objected that these requests are "overly broad and unduly burdensome, contain[] trade secrets and other highly confidential information, and [are] not calculated to lead to the discovery of admissible evidence." (*Id.*) Success refused to produce any documents in response to Request No. 33 and only agreed to produce unspecified "test sheets and related documents" in response to Request Nos. 34–36. (*Id.*)

Success's boilerplate objections are insufficient. "Trial courts in this circuit have repeatedly admonished litigants that the specificity requirement is not satisfied by . . . the boilerplate refrain that every request is 'overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.'" *Belparts Grp., N.V. v. Belimo Automation AG*, 2022 WL 1223018 at *2 (D. Conn. Apr. 26, 2022).

Documents relating to Smokin' Rebates are obviously relevant to the parties' claims and defenses. Success falsely alleges "[u]pon information and belief" that its "Confidential Information" was "appropriated *from Success's software*." (ECF No. 27 at ¶ 61 (emphasis added).) Indeed, Success's interrogatory answers falsely state it "sent CRS and Shin Heung portions of Smokin' Rebates Code." (Ex. 1 at 13.) Success further falsely alleges "[u]pon information and belief" that CRS and others are using Success's "Confidential Information" to "creat[e] a

19

competing tobacco rebate reporting solution" and are "using Success Systems' proprietary tobacco rebate reporting solution intellectual property," which is the "tobacco loyalty program named 'Smokin' Rebates.'" (ECF No. 27 at ¶¶ 8–9, 63–64.) CRS cannot refute these allegations without Success producing the evidence of what it claims was misappropriated.

Success cannot object to producing its own confidential information and trade secrets when it put them directly at issue by starting this lawsuit alleging CRS and Shin Heung misappropriated confidential information and trade secrets relating to Smokin' Rebates. (Ex. 2 at 12.) The parties' stipulated Confidentiality Agreement and Protective Order provides sufficient protections for Success's concerns. (ECF Nos. 51, 53.) *Metavante Corp. v. Emigrant Sav. Bank*, 2008 WL 4722336 at *1 (E.D. Wis. Oct. 24, 2008) ("As such, [the responding party's] valid concerns about maintaining the confidentiality of its source code appear to be addressed by the protective order.").

Success's burdensome objection provides no details about the time or expense involved in producing documents relating to Smokin' Rebates. "Under well-settled law, the party resisting production bears the responsibility of establishing undue burden." *Huminski v. Stop & Shop Supermarket Co.*, 2017 WL 2779468 at *1 (D. Conn. June 27, 2017). "[A] party objecting to a discovery request on the grounds that the information sought is unduly burdensome must go beyond the familiar litany that requests are burdensome, oppressive or overly broad and submit affidavits or other evidence revealing the nature of the burden." *Schiavone v. Ne. Utils. Serv. Co.*, 2010 WL 382537 at *1 (D. Conn. Jan. 27, 2010). Success has possession of the requested documents, likely already in electronic form, and can produce the source code control system file for Smokin' Rebates simply by exporting it from its software configuration management and version control system application, which is an automated process. To the extent it requires any labor, which Success has not attested to, it employs software professionals who can perform the

task themselves without any out-of-pocket costs. (Ex. 1 at 3.) Even if responding to discovery would require Success to engage a third-party vendor, that is simply a part of modern-day discovery and not a basis for refusing to produce highly relevant documents.

Success's threadbare objections about the burden of producing its confidential information and trade secrets are insufficient to outweigh their critical importance in resolving the parties' claims and defenses. Success's agreement to produce only "test sheets and related documents," whatever that means, in response to Request Nos. 34–36 is inadequate, does not agree to produce all responsive documents, and does not specify what documents are being withheld as required by Rule 34(b)(2)(B). The Court should compel Success to produce all documents responsive to Request Nos. 33–36.

## IV.   The Court should compel Success to describe the facts and subject matters known by persons with relevant knowledge of the parties' claims and defenses.

CRS issued an interrogatory to Success seeking identification of potential witnesses, including a description of the facts and subject matters known by each person:

**INTERROGATORY NO. 1:**

Identify all persons with knowledge of facts relating to the parties' claims and defenses and describe the facts known by each person, the subject matters of each person's knowledge, and the testimony you expect each person to provide, if any, at trial.

(Ex. 1 at 3.) Success's answer made no specific objections, identified more than a dozen persons, and merely stated that each have vague "general knowledge" of unspecified "allegations and defenses" or "facts" without any further detail. (*Id.*)

CRS is entitled to a description of the facts and subject matters known by each person so it can assess the need to depose them instead of speculating and conducting expensive and

unnecessary depositions. The Court should compel Success to provide a full answer to Interrogatory No. 1.

## V.   The Court should compel Success to describe the alleged "unfair and deceptive business practices of CRS."

CRS issued an interrogatory to Success seeking information regarding its unfair trade practices claim:

> **INTERROGATORY NO. 14**
>
> Describe "the unfair and deceptive business practices of CRS" alleged in Paragraph 112 of the Second Amended Complaint, including by identifying all documents and communications relating to each practice, the persons who engaged in each practice, the date each practice occurred, by describing how each practice was unfair, deceptive, and offended public policy.

(Ex. 1 at 8–9.) Success's answer provided no information, and instead merely "refer[ed] CRS to its allegations in the Second Amended Complaint" and unspecified "documents and communications supporting its allegations." (*Id.*)

As discussed above, Rule 33(d) permits a party to refer to its "business records," not allegations in pleadings or other discovery, and requires the party to specifically identify the records where responsive information can be as readily found by both parties. *Sellitto-Taylor* v, 2021 WL 950323 at *3. Success has not specifically identified any documents or communications where information responsive to Interrogatory No. 14 can be found and only Success has the ability to ascertain what "documents and communications support[] its allegations" because there appear to be none. (Ex. 1 at 9.)

Success made no valid objections to Interrogatory No. 14, which seeks obviously relevant information about the practices alleged to support its unfair trade practices claim. (*Id.* at 8.) It is not unduly burdensome to expect Success to describe the unfair practices it must prove as an element of its claim. (*Id.*) And there is nothing vague about Interrogatory No. 14, which seeks

descriptions of the alleged practices and identification of objective information about persons, dates, documents, and communications relating to them. (*Id.*) The Court should compel Success to provide a full answer to Interrogatory No. 14.

## VI.     The Court should compel Success to produce information and documents relating to its alleged damages.

CRS issued an interrogatory to Success seeking information relating to Success's damages claim:

> **INTERROGATORY NO. 15:**
>
> Describe your alleged damages for each of Counts Three to Five and Seven of the Second Amended Complaint and your efforts to mitigate them, including by providing an itemization of your damages claim, any alleged damages calculations, by describing the methodology you used to compute them, by identifying their category or type, the amount of each category or type, the date you undertook efforts to mitigate them, the persons who undertook the efforts, the amount you mitigated, all persons with knowledge of facts supporting your alleged damages, and all documents and communications supporting your alleged damages.

(Ex. 1.) Success's answer to Interrogatory No. 15 provided no information and instead merely "refer[ed] CRS to its allegations in the Second Amended Complaint," Success's "Initial Disclosures," and unspecified "documents and communications supporting its damages claim," promising that further information and documents were forthcoming, which they have not been.

CRS also issued a request for Success to produce documents relating to its financial records that would bear on its damages claim:

> **REQUEST NO. 45**
>
> All documents relating to your financial records for Smokin' Rebates, including account statements, balance sheets, income statements, statements of operations, statements of cash flows, profit and loss statements, earning statements, statements of changes in equity, budgets, projections or forecasts of revenue, income, earnings, growth, profits, expenses, costs, depreciation, losses, or any other financial statements, as well as any analysis, reports, records, valuation reports, opinions, estimates, market analysis, sales comparisons, or any other documents used to determine the value of Smokin' Rebates.

(Ex. 2.) Success objected and refused to produce documents in response to Request No. 45 on the basis it is "overly broad and unduly burdensome, contains trade secrets and other highly confidential information, and is not calculated to lead to the discovery of admissible information." (*Id.*)

Success has entirely failed and refused to produce any information or documents relating to its damages claim. Success's answer to Interrogatory No. 15 is deficient because Rule 33(d) permits parties to refer to "business records," not allegations in pleadings or other discovery. *Sellitto-Taylor* v, 2021 WL 950323 at *3. Success's Initial Disclosures claim damages in excess of $3 million based on the "value of [its] trade secrets and intellectual property" and "loss of business," but do not provide any information supporting these claimed damages categories.

Success made no valid objections to Interrogatory No. 14 or Request No. 45. Success's damages are obviously relevant and its financial records will bear on the value of Success's alleged trade secrets and loss of business, which is what its Initial Disclosures identified as the basis of its damages claim. Success provided no explanation why it would be unduly burdensome for it to describe its damages and produce its financial records. And the parties' stipulated Confidentiality Agreement and Protective Order provides sufficient protections for Success's confidentiality concerns. (ECF Nos. 51, 53.)

The Court should compel Success to provide a full answer to Interrogatory No. 15. The Court should also compel Success to produce all documents responsive to Request No. 45.

## VII.   The Court should compel Success to describe the facts supporting its affirmative defenses.

CRS issued an interrogatory to Success seeking information regarding Success's alleged affirmative defenses:

**INTERROGATORY NO. 19:**

Describe all facts supporting each of your affirmative defenses, including by identifying the "officers and employees" who "defamed and disparaged Success," the date they did so, how they did so, what they stated, the persons to whom they made the alleged statements, the name and address of each person who possesses facts in support of each affirmative defense, the date of each fact in support of your affirmative defense, any other party with knowledge or information with respect to your alleged affirmative defense, and by describing any other conduct by CRS and any other bases supporting each affirmative defense.

(Ex. 1 at 11–12.) Success answered only with respect to "Affirmative Defense #1," vaguely referring to "several occasions" when CRS allegedly "defamed" Success, but only referencing two such occasions, and did not provide all of the requested information about the occasions or any facts supporting Success's eight other affirmative defenses. (*Id.* at 12.)

Success made no valid objections to Interrogatory No. 19. It is not vague, it seeks a description of the facts supporting Success's affirmative defenses that are within Success' own knowledge, and identification of objective information relating to them. The facts supporting Success's affirmative defenses are relevant and it bears the burden of establishing them. It is not unduly burdensome to expect Success to describe the facts supporting the affirmative defenses it alleged.

As a result of counsels' meet and confer, Success already agreed it "will provide additional information" for Interrogatory No. 19, but it has failed to do so. (Ex. 7 at 2.) The Court should compel Success to provide a full answer to Interrogatory No. 19.

## VIII. The Court should compel Success to describe the facts supporting its denials of CRS's Requests for Admission.

CRS issued an interrogatory to Success seeking information regarding the facts supporting Success's denials of CRS's Requests for Admission:

**INTERROGATORY NO. 20:**

For each of your responses to CRS's Requests for Admission that is not an unqualified admission, identify the number of the request for admission and describe all facts upon which you base your denial, identify the persons who have knowledge of those facts, and all documents and communications relating to those facts.

(Ex. 1 at 12–13.) Success denied in whole or part CRS's Requests for Admission Nos. 2, 13, 16–18, 29, and 30, but its answer to Interrogatory No. 20 does not fully describe the facts supporting its denials. (Exs. 3 at 2, 4, 5, 8.)

Success's interrogatory answer did not describe any facts supporting its denial of Request No. 2, which requested that Success admit it did not pay any refunds to its customers. (Ex. 1 at 12–13.) Success denied Requests Nos. 13 and 16–18, which requested that Success admit it did not author or send any software code to CRS or Shin Heung, but its interrogatory answer merely stated the inverse of the request and did not identify any supporting facts, persons with knowledge of those facts, or any documents or communications constituting or transmitting the code it claimed it authored and sent. (*Id.*) Success also denied Requests Nos. 29 and 30, but its interrogatory answer merely stated it "believes" and has "reason to believe" facts exist supporting its denials, without describing any facts supporting its beliefs. (*Id.* at 13.)

Success made no valid objections to Interrogatory No. 20. It seeks relevant factual support for Success's denials of requests relating to the refunds it alleges it paid its customers, the software code it alleges it authored and transmitted, and the confidential information and trade secrets it alleges were misappropriated. Success again provided no explanation why it would be unduly burdensome for it to describe the facts supporting its denials of CRS's Requests for Admission, which it must have to deny them in good faith under Rule 36. Interrogatory No. 20 is not vague, it seeks a description of the facts supporting Success's denials and the identification of objective information relating to those facts.

As a result of counsels' meet and confer, Success already agreed it "will provide additional information" for Interrogatory No. 20, but it has failed to do so. (Ex. 7 at 2.) The Court should compel Success to provide a full answer to Interrogatory No. 20.

IX.     **The Court should compel Success to identify the documents it refers to in its interrogatory answers by specific document numbers.**

Success responded to many of CRS's interrogatories by referring to documents without identifying them with sufficient specificity for CRS to locate them:

> **INTERROGATORY NO. 8:**
>
> Describe the "investigations" you conducted as alleged in Paragraph 37 of the Second Amended Complaint and the "test findings" referenced in your email to Sale Point on April 1, 2021, including by describing the methods, assumptions, and results of each investigation and test you conducted, and by identifying the dates when you conducted each investigation and test, the persons who conducted each investigation and test, and all communications, documents, and persons relating to each investigation and test.
>
> **INTERROGATORY NO. 13:**
>
> Describe the "telephone and Skype calls" alleged in Paragraph 55 of the Second Amended Complaint, including by identifying the dates of each call, the persons who participated in each call, the "data, quality testing documentation, design, and versions of the Software" exchanged during each call, and all documents and communications relating to each call.
>
> **INTERROGATORY NO. 16:**
>
> Describe all of the persons to whom you sent your email on February 23, 2021 stating that your "technology is embedded" in the SAM4s, including by identifying their name, employer, any business name, home address, telephone number, email address, and all documents and communications relating to your email and any responses you received.

(Ex. 1 at 7, 9, 10.) Success's answers provided no information and instead merely referred to vague "documents," "records," and "documents and communications supporting" its allegations, without specific reference to any such records, documents, or communications. (*Id.*) Success provided

similar references to unspecified "documents and communications" in its answers to Interrogatory Nos. 14 and 15, which are set forth above. (*Id.* at 9–10.)

"Rule 33(d) does not permit a party to avoid specific responses to interrogatories by reference to undifferentiated masses of documents." *This, LLC v. Jaccard Corp.*, 2017 WL 547902 at *3 (D. Conn. Feb. 9, 2017). It is impossible for CRS to ascertain the requested information from Success's vague references to "documents," "records," and "communications." (Ex. 1 at 7, 9, 10.) It is also impossible for CRS to ascertain what records Success "documents and communications support[]" its allegations, because again, there appear to be none. (*Id.*)

As a result of counsels' meet and confer, Success already agreed to "specifically reference documents by Bates number," including for Interrogatories Nos. 8 and 13–16, but it has failed to do so. (Ex. 7 at 1–2.) The Court should compel Success to provide full answers to Interrogatory Nos. 8 and 13–16, and to the extent Success refers to its business records where responsive information can be found, by specifically identifying those records by their document numbers and otherwise complying with Rule 33(d).

X.   **The Court should award CRS's reasonable expenses including attorneys' fees incurred in making this Motion.**

Local Rule 37(c) provides, "Where a party has sought or opposed discovery which has resulted in the filing of a motion, and that party's position is not warranted under existing law and cannot be supported by good faith argument for extension, modification or reversal of existing law, sanctions will be imposed in accordance with applicable law." Fed. R. Civ. P. 26(c)(1), 37(a)(5). Rules 26(c)(3) and 37(a)(5) authorize an award of "the movant's reasonable expenses incurred in making the motion, including attorney's fees," which under Local Rule 37(c) are "calculated by using the normal hourly rate of the attorney for the party."

Rules 26(c), 33(b), and 34 require Success to "fully" answer interrogatories, specifically refer to business records only when responsive information can be "readily" found in them, and produce responsive documents "as requested" absent specific and valid objections. There is no law warranting Success's discovery deficiencies, which arise from its failure and refusal to produce responsive, reasonable, and relevant information and documents.

Instead, Success has attempted to evade its obligation to answer interrogatories and mask the deficiencies of its claims by referring to external documents, which it either fails to identify with sufficient specificity, or do not actually contain responsive information, warranting sanctions. *McCullough v. World Wrestling Ent., Inc.*, 2018 WL 2932354 at *4 (D. Conn. Feb. 22, 2018), *report and recommendation adopted*, 2018 WL 4697285 (D. Conn. July 22, 2018) (awarding sanctions for violation of Rule 33(d) given "pattern . . . in most of plaintiffs' interrogatory responses" where plaintiffs "[w]hen confronted with their own allegations taken from their own complaint . . . simply direct the [defendant] to multiple documents and assert that the answer to the interrogatory is located somewhere within these documents"); *This, LLC*, 2017 WL 547902 at *3 (awarding sanctions where plaintiff referred to "mass of business records" in violation of Rule 33(d) and failed to supplement its interrogatory answer with facts supporting its allegation of knowing and willful infringement). As a result, the Court should award CRS's reasonable expenses including attorneys' fees incurred in making this Motion.

## CONCLUSION

Success's discovery deficiencies continue a pattern of conduct that began before this action their only evidentiary value is further proof of CRS's counterclaim for bad faith assertion of trade secret misappropriation. Success is unwilling and unable to define its "Confidential Information" with reasonable specificity because it does not exist. It refused to do so before this lawsuit and it

cannot do so now in discovery. Instead, Success hopes to first obtain others' confidential information and trade secrets by abusing discovery, which it will then claim as its own.

The Court should issue an order protecting CRS from producing confidential information and trade secrets, including in response to Success's Requests for Production Nos. 9, 16, 19–21, 23, 24, and 28, unless Success first describes its alleged confidential information and trade secrets with reasonable specificity by providing full answers to CRS's Interrogatory Nos. 9–11 and 17 as follows. The Court should also compel Success to provide full answers to CRS's Interrogatory Nos. 1, 8–11, 13–17, 19, and 20, including answers "separately and fully" within its written and signed "Answers and Objections" under Rule 33(b), in a reasonable and complete format usable as an exhibit in future proceedings, and without external references unless they comply with Rule 33(d). The Court should further compel Success to produce all documents responsive to CRS's Requests for Production Nos. 33–36 and 45. Finally, the Court should award CRS's reasonable expenses including attorneys' fees incurred in making this Motion.

Dated: November 22, 2022                          DEFENDANT CRS, INC.


                                                 By:   */s/ John M. Doroghazi*
                                                       John M. Doroghazi (ct28033)
                                                       Wiggin and Dana LLP
                                                       One Century Tower
                                                       P.O. Box 1832
                                                       New Haven, CT 06510
                                                       Tel: 203-498-4400
                                                       jdoroghazi@wiggin.com

                                                       John A. Cotter (phv20332)
                                                       Larkin Hoffman Daly & Lindgren, Ltd.
                                                       8300 Norman Center Drive, Suite 1000
                                                       Minneapolis, Minnesota 55437
                                                       Phone: (952) 896-3340
                                                       Fax: (952) 896-3333
                                                       jcotter@larkinhoffman.com