# EXHIBIT 6



**Larkin Hoffman**

8300 Norman Center Drive
Suite 1000
Minneapolis, MN 55437-1060

General:  952-835-3800
Fax:       952-896-3333
Web:      www.larkinhoffman.com

May 31, 2022

Nathan C. Zezula                                                                                           VIA EMAIL
MOTT ZEZULA LLC
750 East Main Street
Suite 620
Stamford, CT 06902

Re:   *Success Systems, Inc. v. CRS, Inc.* – Discovery Deficiencies

Dear Mr. Zezula,

Success Systems, Inc. and Smart C-Stores, LLC's (collectively, "Success") responses to CRS, Inc.'s discovery requests are almost entirely deficient, providing essentially no information about its alleged claims and defenses, and instead merely providing general references to vague records from which it is impossible to ascertain the requested information. The only evidentiary value of Success's deficient responses is further proof supporting CRS's counterclaim for bad-faith assertion of trade secret misappropriation.

Success has never identified the information it alleges constitutes its trade secrets. As discussed below, Success has an obligation to do so and to identify with reasonable specificity its allegedly "Confidential Information" before CRS is required to provide documents and information to Success. Given these deficiencies, CRS does not have an obligation to produce confidential and trade secret documents and information unless and until Success first describes with reasonable specificity its alleged trade secrets and the "Confidential Information" that forms the basis for its claims.

Success must amend and supplement its responses to CRS's discovery as set forth below. If Success refuses to do so, please let me know your availability this week for a call to meet and confer regarding the following issues.

1. **Success's Requests for Production Nos. 9, 16, 19–21, 23, 24, and 28**

Success's Requests for Production Nos. 9, 16, 19–21, 23, 24, and 28 seek confidential and trade secret documents relating to CRS's business, its service provider BandyWorks, and Shin Heung's software and specifications for the SAM4s. CRS will not produce confidential and trade secret documents and information unless and until Success first describes with reasonable specificity its alleged trades secrets and the "Confidential Information" that forms the basis for its claims.

May 31, 2022
Page 2

Under federal procedure and case law, a party asserting a trade secret misappropriation claim must first describe with reasonable specificity the information that forms the basis for its claim before it is entitled to discovery regarding other's trade secrets. *See, e.g., Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, 2012 WL 3113162 at *2 (D. Conn. July 31, 2012). Success has never described its alleged trade secrets or the "Confidential Information" that forms the basis for its claims. It failed to identify the information prior to commencing its lawsuit. It then failed to identify the information in its pleadings. Now, it fails to identify the information in discovery.

Success must withdraw and agree to limit Requests for Production Nos. 9, 16, 19–21, 23, 24, and 28 unless and until it describes with reasonable specificity its alleged trade secrets and "Confidential Information," including by providing complete answers to CRS's Interrogatory Nos. 9–12 and 17 as set forth below. Once Success does so, CRS will review Success's description and answers to determine whether it is necessary to amend its responses to Request for Production Nos. 9, 16, 19–21, 23, 24, and 28.

2.   **CRS's Interrogatory Nos. 9–12 and 17**

CRS's Interrogatory Nos. 9–12 and 17 seek detailed information regarding the alleged trade secrets and "Confidential Information" that forms the basis for Success's claims. Success's answers provide no information and instead merely refer to a vague "summary" and "documents and communications supporting its allegations," without specific reference to any such summary, documents, or communications.

Fed. R. Civ. P. 33(d) permits a party to refer to business records by "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could," only "if the burden of deriving or ascertaining the answer will be substantially the same for either party." Success has neither specifically identified the vague records it references and regardless only it has the ability to ascertain what information it contends constitutes its alleged trade secrets or "Confidential Information."

Success must supplement its answers to Interrogatory Nos. 9–12 and 17 by describing its alleged trade secrets, "unique, confidential, proprietary changes," "Confidential Information," "technology," the facts supporting its alleged misappropriation or disclosure, and the persons involved, as well as the other details requested therein. Success must also identify the "summary" and "documents and communications" referenced in Success's answers by specific document bates number.

3.   **CRS's Interrogatory Nos. 2–8, 13, 16, and Request for Production No. 15**

CRS's Interrogatory Nos. 2–8, 13, 16, and Request for Production No. 15 seek detailed information and documents regarding Success's alleged issues with the SAM4s and their integration with Smokin' Rebates, including alleged sales, customer contracts, complaints, refunds, lost business, investigations, and communications. Success's answers again provide no information, it refuses to produce documents relating to its customer agreements, and instead merely refer to vague "records and summaries" and "documents and communications supporting its allegations," without specific reference to any such records, summaries, documents, or communications.

May 31, 2022
Page 3

CRS cannot ascertain the requested information from Success's vague references to "records and summaries." CRS also cannot ascertain what "documents and communications" Success contends "support[] its allegations." Documents relating to the agreements between Success and its customers, which are alleged in Paragraphs 13 to 15 and 31 of Success's complaint, are relevant to its damages claims and efforts to protect to its alleged trade secrets.

Success must supplement its answers to Interrogatory Nos. 2–8 and 13 and 16 by describing its SAM4s sales, customers who allegedly "stopped doing business," were "shut down," and made "complaints," the alleged "issues," "problems," "errors," "investigations," "telephone and Skype calls," and recipients of Success's February 23, 2021 email, as well as the other details requested therein. Success must also identify the "records and summaries" and "documents and communications" referenced in Success's answers by specific document bates number. Success must further agree to produce documents relating to its agreements with its customers in response to Request for Production No. 15.

4. **CRS's Interrogatory No. 15 and Requests for Production Nos. 41, 42, 44, and 45**

CRS's Interrogatory No. 15 and Request for Production Nos. 41, 42, 44, and 45 seek information and documents relating to Success's alleged damages. Success's answers again provide no information and instead merely "refer[s] CRS to its allegations in the Second Amended Complaint," its Initial Disclosures, and vague "documents and communications supporting its damages claim," without specific reference to any such documents or communications.

To the contrary, Success has entirely refused to produce any documents that might support its damages claim. Fed. R. Civ. P. 33(d) permits parties to refer to "business records," not allegations in pleadings. Success's Initial Disclosures claim damages in excess of $3 million based on the "value of [its] trade secrets and intellectual property" and "loss of business," but do not provide any information supporting these claimed damages categories. CRS's Requests for Production Nos. 41, 42, 44, and 45 seek marketing and financial records that would bear on the value of Success's alleged trade secrets and loss of business, but Success has refused to produce them.

Success must supplement its answer to Interrogatory No. 15 by describing its damages, the evidence supporting them, providing the requested details, and identifying the "documents and communications" referenced therein. Success must also produce documents relating to its marketing and financial records in response to Requests for Production Nos. 41, 42, 44, and 45.

5. **CRS's Requests for Production Nos. 16, 17, 33, and 34–36**

CRS's Requests for Production Nos. 16, 17, 33, and 34–36 seek documents regarding Smokin' Rebates, including software, source code, integration, development, and project management records. Success's responses do not agree to produce anything besides "a list of point-of-sale systems with which it has successfully integrated the Smokin' Rebates products" and "test sheets and related documents," without stating whether it is withholding any documents.

According to the allegations in Success's complaint, Smokin' Rebates is the program that appears to form the basis for its misappropriation and non-disclosure claims. Documents relating

May 31, 2022
Page 4

to Success's software, source code, integration, development, and project management records for Smokin' Rebates are relevant to its claims alleging misappropriation and disclosure of its trade secrets and "Confidential Information," its efforts to protect them, and their alleged value. Indeed, CRS is entitled to such documents to ascertain the nature, content, and protectability of Success's alleged trade secrets and "Confidential Information," which is necessary for CRS to prove it has not misappropriated or disclosed anything relating to Smokin' Rebates. Fed. R. Civ. P. 34(b)(C) requires an objecting party to "state whether any responsive materials are being withheld on the basis of that objection," and Success's responses fail to state whether it is withholding any documents on the basis of its objections.

Success must produce documents in response to Requests for Production Nos. 16, 17, 33, and 34–36. Success must also state whether it is withholding any documents on the basis of its objections. To the extent Success is withholding any documents based on an objection that they contain confidential and trade secret information, the parties have stipulated to entry of a protective order providing reasonable confidentiality assurances to resolve any such objection.

6. **CRS's Interrogatory No. 1**

CRS's Interrogatory No. 1 seeks identification of persons with knowledge of facts relating to the parties' claims and defenses, including a description of the facts and subject matters known by each person, their names, and contact information. Success's answer merely states that the listed persons have "general knowledge" of vague "allegations and defenses" or "facts" without any further detail, and also fails to provide names and contact information for several persons.

Success must supplement its answer to Interrogatory No. 1 with the requested description of facts and subject matters known by each person. CRS also demands that Success identify names and contact information for Dandy Dan, Smoke for Less, and Discount Foods of Lenoir, as well as the specific identifies of the "CRS-USA dealers from 2019 to present" that Success claims have knowledge of facts relating to the parties' claims and defenses.

7. **CRS's Interrogatory No. 14**

CRS's Interrogatory No. 14 seeks information regarding the "unfair and deceptive business practices of CRS" alleged by Success. Success's answer again provides no information, and instead merely "refer[s] CRS to its allegations in the Second Amended Complaint" and vague "documents and communications supporting its allegations," without specifying any such documents or communications.

Once again, Fed. R. Civ. P. 33(d) permits parties to refer to "business records," not allegations in pleadings. Regardless, Success has not specifically identified any documents or communications and only Success has the ability to ascertain what records it contends "support[] its allegations."

Success must supplement its answer to Interrogatory No. 14 by describing the "unfair and deceptive business practices of CRS" alleged by Success, including by identifying the practice, the persons who engaged in it, the date it occurred, and how it was unfair, deceptive, and offended

May 31, 2022
Page 5

public policy. Success must also identify the "documents and communications" referenced in Success's answer to Interrogatory No. 14 by specific document bates number.

8. **CRS's Interrogatory No. 19**

CRS's Interrogatory No. 19 seeks information regarding the facts supporting Success's alleged affirmative defenses. Success's answer vaguely refers to "several occasions" when CRS allegedly "defamed" Success, but only references two such occasions, does not provide all of the requested information about the occasions, and provides no information regarding any facts supporting Success's eight other affirmative defenses.

Success must supplement its answer to Interrogatory No. 19 by describing all of the "occasions" when Success alleges CRS defamed it, including specifically what was stated and the identity of the "distributors and dealer" to whom the statements were allegedly made. Success must also supplement its answer with any other facts supporting its eight other affirmative defenses or withdraw those defenses.

9. **CRS's Interrogatory No. 20**

CRS's Interrogatory No. 20 seeks information regarding the facts supporting Success's denials of CRS's Requests for Admission. Success's answer merely refers to its responses to CRS's Requests for Admission, which do not provide the requested information.

Success has denied in whole or part CRS's Requests for Admission Nos. 2, 3, 8, 13–21, 29, and 30, but none of its responses actually state any facts supporting its denials. Additionally, Fed. R. Civ. P. 33(d) permits parties to refer to "business records," not other discovery responses. The facts supporting Success's denials of CRS's Requests for Admission must be set forth in its answer to Interrogatory No. 20 because they must be signed by the person making the answer.

Success must supplement its answer to Interrogatory No. 20 by describing the facts supporting its denials of Requests for Admission Nos. 2, 3, 8, 13–21, 29, and 30. Success must also supplement its answer by identifying the persons, documents, and communications supporting the facts described therein.

10. **CRS's Requests for Admission Nos. 3, 8, 17, and 20.**

Success's responses to CRS's Requests for Admission Nos. 3, 8, 17, and 20 deny only parts of the requests. Under Fed. R. Civ. P. 37(a)(4), "A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Success must supplement its responses to Requests for Admission Nos. 3, 8, 17, and 20 by admitting the parts of the requests that are not denied.

May 31, 2022
Page 6

11. **CRS's Interrogatories**

Success's answers to CRS's Interrogatories are unsigned. Fed. R. Civ. P. 33(b)(5) requires that "[t]he person who makes the answers must sign them." Success must identify the person who is answering on its behalf and sign its answers.

**Meet and Confer**

CRS demands that Success withdraw and agree to limit Success's Requests for Production Nos. 9, 16, 19–21, 23, 24, and 28 and amend and supplement its responses to CRS's discovery requests as set forth above by June 3, 2022. If Success refuses to do so, I am available anytime this week for a call to meet and confer as required by Fed. R. Civ. P. 37(a)(1) and D. Conn. L. Civ. R. 37(a).

By identifying the above deficiencies and offering to meet and confer regarding them, CRS is not waiving the other deficiencies with Success's discovery responses or any objections to Success's discovery requests. To the contrary, CRS specifically reserves its right to move for an order compelling further responses to its discovery requests and protecting it from producing documents and information based on its objections to Success's discovery requests.

Sincerely,

*/s/ Henry Pfutzenreuter*

R. Henry Pfutzenreuter, for
Larkin Hoffman

Direct Dial:  952-896-3325
Email: hpfutzenreuter@larkinhoffman.com