UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Success Systems, Inc., *et al.*, <br><br>  Plaintiffs, <br><br> v. <br><br> CRS, Inc., *et al.*, <br><br>  Defendants. | Civil No. 3:21-cv-01391 (SVN) <br><br><br><br> March 8, 2023 |

### RULING ON DEFENDANT CRS, INC.'S
### MOTION TO COMPEL AND FOR PROTECTIVE ORDER [ECF No. 72]

In this trade secret case, the defendant, CRS, Inc. ("CRS"), has moved the Court for an order compelling the plaintiffs, Success Systems, Inc. and Smart C-Stores, LLC (together, "Success") to provide more detailed responses to several interrogatories and requests for production. ("Motion," ECF No. 72.) CRS also seeks a protective order "providing that CRS does not have to produce confidential information and trade secrets, including in response to Success's Requests for Production Nos. 9, 16, 19-21, 23, 24, and 28, unless Success first describes its confidential information and trade secrets alleged in its complaint with reasonable specificity by providing full answers to CRS's Interrogatory Nos. 9-11 and 17." (*Id.*) CRS also seeks an award of fees and costs. (*Id.* at 2.)

Success filed an opposition ("Opp'n," ECF No. 81), and CRS filed a reply. ("Reply," ECF No. 82.) The Court heard oral argument on February 28, 2023. (ECF No. 87.) CRS's Motion is therefore ripe for decision.

1.   **Motion to Compel**

   a.   *Interrogatories 9, 10, 11, and 17*

CRS seeks an order compelling Success to provide more detailed responses to four related interrogatories.  In its Second Amended Complaint, Success alleged that it supplied CRS with "over fifty (50) unique, confidential, proprietary" product changes (Second Am. Compl., ECF No. 27, ¶ 51), and CRS's Interrogatory 9 asked Success to describe those changes.  (Ex. 1 to Motion, ECF No. 72-3, at 8.)  Interrogatory 10 asked Success to "[d]escribe all of the 'Confidential Information'" it allegedly provided to CRS, as asserted in paragraphs 51 and 91 of its complaint.  (*Id.* at 9.)  Interrogatory 11 sought disclosure of all facts supporting Success's contention that CRS misappropriated its "Confidential Information," and Interrogatory 17 asked Success to identify any of its technology that ultimately became "embedded" in the defendants' products.  (*Id.* at 9, 12.)  According to CRS, the common theme of these interrogatories was an effort to obtain "reasonable specification of the alleged trade secrets and 'Confidential Information' that forms the basis for Success's misappropriation claims."  (Motion, at 14.)

Success responded to the interrogatories with boilerplate objections.  It asserted that the four interrogatories were "overly broad, unduly burdensome, and vague."  (Ex. 1 to Motion, ECF No. 72-3, at 8-9, 12.)  It also objected on the ground that the interrogatories sought "information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence." (*Id.*)  "Subject to the objections, and without waiving the same," it then referred CRS to a spreadsheet that it had prepared, allegedly listing the product changes, "Confidential Information" and other items sought by the interrogatories.  (*Id.*)

CRS says that the spreadsheet does not sufficiently answer any of the four interrogatories. (Motion, at 15-16.)  It calls the spreadsheet "incomprehensible, non-responsive and voluminous,"

and says that it "is devoid of responsive information, using incomplete sentences, meaningless terms, and references to other unspecified emails, items, cloud storage sites, attachments, and documents." (*Id.* at 15.) CRS also argues that Success cannot use the spreadsheet to invoke Rule 33(d)'s option to answer an interrogatory by producing business records, as it attempted to do, because the spreadsheet was "created for the purpose of answering CRS's interrogatories" and is therefore "obviously not a business record." (*Id.* at 16.) More fundamentally, CRS asserts that "[s]ince the spreadsheet is a mere 'summary,' it does not appear to include the actual 'Confidential Information' Success claims it supplied." (*Id.* at 15.)

After CRS filed its motion to compel, Success abandoned its overbreadth, undue burden, vagueness, and lack of relevance objections. (Opp'n at 10-12.) Its principal remaining objection is that the spreadsheet "is sufficient, at this stage of the case, to satisfy Success' discovery obligations."[1] (*Id.* at 10.) At oral argument, Success explained that it had attempted to clarify the spreadsheet by taking the information on its summary page and putting it in narrative form in its "Second Amended Objections and Responses to Interrogatories." (ECF No. 89.) But CRS says that even in this form, the information that Success has provided is non-responsive to the interrogatories. Thus, the question presented by this portion of CRS's Motion is whether Success's responses were sufficient to meet its discovery obligations.

"Cases involving trade secret claims follow the normal procedures set by the Federal Rules; however, courts have universally recognized that defining the scope of discovery in trade secret cases can be particularly difficult, because there is highly sensitive information and proprietary concerns on both sides." *Uni-Systems, LLC v. U.S. Tennis Ass'n*, No. 17-cv-147 (KAM) (CLP),

---

[1] Success also argues that CRS's motion is premature, because "discussions regarding discovery were ongoing." (*Id.* at 8.) The Court will address this argument in Section 3.

2017 WL 4081904, at *4 (E.D.N.Y. Sept. 13, 2017) (citing *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 679 (N.D. Ga. 2007)). "To address the scope of discovery in such cases, federal courts regularly require trade secrets plaintiffs to identify alleged trade secrets with 'reasonable particularity.'" *Id.* (quoting *DeRubeis*, 244 F.R.D. at 681). "Although definitions vary, that standard generally requires that the plaintiff provide enough information about the alleged trade secrets (1) to put the defendant on notice of the nature of plaintiff's claims, and (2) to allow defendant to discern the relevancy of any discovery requests." *Id.* The standard "is flexible," and it allows for the fact that plaintiffs sometimes "may not know which parts of its trade secrets have been misappropriated." *Id.* "Thus, the strength of the showing sufficient to identify trade secrets with sufficient particularity varies with the facts and stage of the case." *Id.* (citing *Storagecraft Tech. Corp. v. Symantec Corp.*, No. 2:07-cv-856 CW, 2009 WL 361282, at *2 (D. Utah Feb. 11, 2009).

      Applying these principles to this case, the Court concludes that Success's responses to the four interrogatories are insufficient. This is not a case in which the plaintiff does not know which of its trade secrets has been misappropriated; Success specifically alleges that it supplied "over fifty (50) unique, confidential, proprietary" software changes to CRS, and that the defendants misappropriated them by retaining them after the parties' business relationship dissolved. (Second Am. Compl., ECF No. 27, ¶¶ 51, 81-82.) It should therefore be able to plainly state what those changes were, but it has not done so, in two respects. First, the summary page of the spreadsheet and the subsequent revised, narrative-form interrogatory responses identify only thirty-three items, not "over fifty." Second and more substantively, Success did not actually *describe* each allegedly-purloined product change or item of Confidential Information, as required by the interrogatories – it only described the claimed effect on CRS's software. (*See, e.g.*, ECF No. 89 at 13) (stating that

"Success provided CRS with IP enabling the display of tender amount and changes thereto," but not actually describing what the intellectual property was). Because neither the spreadsheet nor the supplemental responses fully answered the interrogatories, CRS's motion to compel is **GRANTED** as to Interrogatories 9, 10, 11, and 17.

      b.      ***Requests for Production 33, 34, 35, and 36***

CRS next seeks an order compelling further compliance with its Requests for Production Nos. 33, 34, 35, and 36. Those requests sought disclosure of, *inter alia*, the complete source code for Success's "Smokin' Rebates" program and all documents concerning its development. Success objected on the grounds that the requests are "overly broad and unduly burdensome, contain[] trade secrets and other highly confidential information, and [are] not calculated to lead to the discovery of admissible evidence." (Ex. 2 to Motion, ECF No. 72-4.) CRS responded to the last ground by pointing to paragraph 61 of the Second Amended Complaint, in which Success alleged that CRS misappropriated "Confidential Information" "from Success's software." (Motion at 19) (quoting Second Am. Compl., ECF No. 27, ¶ 61). In CRS's view, this allegation renders relevant the entire source code and all information related to its development. (*Id.* at 19-20.)

CRS's motion is **GRANTED IN PART AND DENIED IN PART** with respect to Requests for Production Nos. 33, 34, 35, and 36. The motion is granted to the extent that Success is directed to produce the portions of the code that it claims to have provided to CRS, and any e-mails or other documents in which it provided those portions; such discovery is obviously relevant and has not been shown to be unduly burdensome. *Doe v. Wesleyan Univ.,* No. 3:19-cv-1519 (JBA) (TOF), 2021 WL 4704852, at *4 (D. Conn. Oct. 8, 2021) ("To resist relevant discovery on grounds of undue burden, a party must ordinarily demonstrate that burden with an affidavit or other proof."). The motion is denied as to the remaining portions of the code and documents

relating to its development, because CRS has not yet explained to the Court's satisfaction why this additional information would be relevant to any claim or defense in the case.[2] *Huseby, LLC v. Bailey*, No. 3:20-cv-167 (JBA) (TOF), 2021 WL 3206776, at *6 (D. Conn. July 29, 2021) ("*Huseby II*") ("When a party files a motion to compel, it bears the initial burden to show the relevance of the information it seeks.").

      c.      ***Other Interrogatories and Requests for Production***

CRS's motion is **GRANTED** with respect to Interrogatory No. 1. That interrogatory sought the identity of "all persons with knowledge of facts relating to the parties' claims and defenses," along with "the subject matters of each person's knowledge, and the testimony you expect each person to provide." (Ex. 1 to Motion, at 4.) "Subject to" several "general objections,"[3] Success identified sixteen individuals, along with "[a]ll CRS-USA dealers from 2019 to present." (*Id.*) As to the "subject matters of each person's knowledge," Success answered vaguely that the individual had "general knowledge" of the "allegations and defenses" in the case, or "general

---

[2]     At oral argument, CRS suggested that the relevance calculus might change during expert discovery. The denial of this portion of its motion is therefore without prejudice to renewal at a later stage of the case. In any such revised motion, CRS shall carefully explain why its expert needs to see the entire Smokin' Rebates source code and all documents relating to its development to make sense of Success's misappropriation claims.

[3]     Each party asserted several "general objections" to the other's discovery requests. (*See* Ex. 2 to Motion, at 2-3 (Success's responses to CRS's requests for production, asserting six "general objections"); Ex. 9 to Motion, ECF No. 72-11, at 2-6 (CRS's responses to Success's requests for production, asserting nineteen "general objections").) The parties are respectfully reminded that "general objections" to discovery requests "are not favored" in the Second Circuit. *Barberan v. NationPoint*, No. 07-Civ.-11595 (KMK) (LMS), 2013 WL 12446291, at *2 (S.D.N.Y. Aug. 8, 2013). "General" objections are appropriate only in the "rare[]" instance in which each objection genuinely applies to each document request. *Owen v. Elastos Found.*, __ F.R.D. __, 2023 WL 194607, at *9 (S.D.N.Y. Jan. 11, 2023). Moreover, "general" objections to document production requests are no less subject to Rule 34(b)(2)(C) than specific objections. That rule provides that each "objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). Here, neither party stated whether they were withholding responsive documents pursuant to their "general" objections. (*See generally* Exs. 2 and 9 to Motion.)

knowledge of facts relevant" to his or her company.  (*Id.*)  But several of the individuals are Success's own employees, and it can surely provide more detail at least as to these persons' knowledge.

CRS's motion is **GRANTED** with respect to Interrogatory No. 14.  That interrogatory asked Success to "[d]escribe 'the unfair and deceptive business practices'" alleged in its complaint, "including by identifying all documents and communications relating to each practice, the persons who engaged in each practice, [and] the date each practice occurred." (*Id.* at 14.)  Success asserted several boilerplate objections (*id.* at 14-15), but it failed to brief them, and the Court therefore deems them abandoned.  *Huseby, LLC v. Bailey*, No. 3:20-cv-167 (JBA) (TOF), 2021 WL 723319, at *4 n.1 (D. Conn. Feb. 24, 2021) ("*Huseby I*") ("Courts around the country have held that the failure to brief [a discovery] objection constitutes an abandonment of that objection.").  Success now defends against CRS's motion by asserting that its response is sufficient (Opp'n at 14), but the Court disagrees.  The response merely repeats the allegations of the complaint, many of which were asserted "on information and belief," and it includes no information about the date the alleged unfair business practice was committed nor the name of the person who allegedly committed it. (ECF No. 89, at 26-28.)

CRS's motion is **GRANTED** as to Interrogatory 15 and Request for Production No. 45.  Interrogatory 15 asked Success to "[d]escribe [its] alleged damages for each of Counts Three to Five and Seven of the Second Amended Complaint and [its] efforts to mitigate them[.]" (Ex. 1 to Motion, at 11.)  Request for Production 45 sought "[a]ll documents relating to your financial records for Smokin' Rebates, including account statements, balances sheets, income statements," etc. (Ex. 2 to Motion, at 15.)  As it did with many of CRS's other requests, Success responded with boilerplate burden and lack of relevance objections (Ex. 1 to Motion, at 11; Ex. 2 to Motion,

at 15), but abandoned those objections and asserted others in its opposition to CRS's motion to compel. (Opp'n at 14.) With respect to Interrogatory 15, Success now argues that any inquiry into its damage claims is "premature," because the Scheduling Order's date for damage analyses and disclosures of damages experts has not yet arrived. (*Id.*) But Success did not object to the interrogatory on that ground (Ex. 1 to Motion, at 11), and in any event there is no reason why it cannot answer now with the information it currently has, subject to supplementation after its expert completes his analysis. With respect to Request for Production 45, Success now contends that "the burden . . . is not reasonably proportional to its value." (Opp'n at 14.) But here too, Success did not object to the request on that ground. (Ex. 2 to Motion, at 15.) And even if Success had preserved a lack-of-proportionality objection, it was obliged to support the burden element of the proportionality analysis with an affidavit or other proof. *Conservation L. Found., Inc. v. All-Star Transp., LLC*, No. 3:21-cv-201 (JBA) (TOF), 2022 WL 16901999, at *2 (D. Conn. Nov. 11, 2022) (observing that "[e]ach party bears a burden with respect to proportionality[;]" whereas the requesting party "should be able to explain the ways in which the underlying information bears on the issues," the resisting party "bears the burden on the 'burden and expense' element," which ordinarily requires submission of "affidavits or . . . evidence revealing the nature of the burden"). Success provided no affidavit or other evidence with which the Court could properly assess its claims of undue burden.

CRS's motion is **GRANTED** with respect to Interrogatory 19. That interrogatory sought disclosure of "all facts supporting each of [Success's] affirmative defenses" to CRS's counterclaim, "including by identifying," among other things, "the 'officers and employees' who 'defamed and disparaged Success,' the date they did so, [and] how they did so." (Ex. 1 to Motion, at 12-13.) Here too, Success asserted several boilerplate objections, but did not brief those objections in

response to CRS's motion to compel. (Opp'n at 15.) In its opposition, it says only that some of its defenses "are legal in nature, and do not lend themselves well to a recitation of 'supporting facts.'" (*Id.*) It promised to "to provide additional information where possible" (*id.*), but the Court has reviewed the supplemental responses and they are still incomplete. For example, Success responded to the portion of the interrogatory that concerned its defamation claim by stating that "CRS defamed [Success] to third parties on several occasions, including but not limited to" one instance "on or about November 21, 2021." (ECF No. 89, at 30.) But if there were indeed "several" instances of defamation, CRS is intitled to know about each one, not just the one that Success chose as an example.

CRS also moved for an order compelling additional responses to Interrogatory 20. That interrogatory sought, with respect to each answer that Success had given to CRS's requests for admission "that is not an unqualified admission[,]" "all facts upon which you base your denial." (Ex. 1 to Motion, at 13.) Success responded with an argument that, "by demanding further information with respect to each . . . request to admit," CRS was actually propounding several separate interrogatories and, by extension, exceeding Rule 33(a)(1)'s 25-interrogatory limit. (Opp'n at 15-16.) CRS disagreed, but it nonetheless withdrew its motion with respect to this interrogatory in light of Success's promise to supplement its answer. (Reply at 10.) CRS's motion is therefore **DENIED** as to Interrogatory 20.

Finally, CRS moved to compel further responses to Interrogatories 8, 13, and 16. (Motion, at 27-28.) Success responded to each of these interrogatories by stating that it would produce documents from which the answers could be discerned. (Ex. 1 to Motion, at 8-11.) Success did not, however, "specify[]" the documents as required by the relevant rule. Fed. R. Civ. P. 33(d) ("If the answer to an interrogatory may be determined by examining . . . a party's business records . . .

9

and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party many answer by . . . specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."). Judging from the Bates numbers on some of the documents referenced in the parties' briefs, it appears that Success produced over 130,000 pages of information to CRS. (*E.g.*, Ex. 5 to Motion) (spreadsheet bearing Bates no. SSI_00139772). CRS is correct that a party may not answer an interrogatory by pointing its opponent to a 130,000-page pile of documents and saying, "your answer is in there somewhere" – at least without first demonstrating that the burden of finding the answer in the pile would be no greater for the interrogating party than the responding party. *See This, LLC v. Jaccard Corp.*. No. 3:15-cv-1606 (JBA), 2017 WL 547902, at *3 (D. Conn. Feb. 9, 2017) ("Rule 33(d) does not permit a party to avoid specific responses to interrogatories by reference to undifferentiated masses of documents."); Fed. R. Civ. P. 33 advisory committee notes to 1980 amendments ("[P]arties upon whom interrogatories are served have occasionally responded by directing the interrogating party to a mass of business records. . . . Such practices are an abuse of the option."). No such demonstration has been made here, and accordingly, CRS's Motion is **GRANTED** as to Interrogatories 8, 13, and 16.

    2. **Motion for Protective Order**

CRS has also moved for a protective order "providing that CRS does not have to produce confidential information and trade secrets" in response to Success's discovery requests, "unless Success first describes its confidential information and trade secrets alleged in its complaint with reasonable specificity by providing full answers to CRS's Interrogatory Nos. 9-11 and 17." (Motion, at 1.)

"A court is given broad discretion regarding whether to issue a protective order under Rule 26(c)." *Jerolimo v. Physicians for Women, P.C.*, 238 F.R.D. 354, 356 (D. Conn. 2006). "Under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, for good cause shown, a court may 'requir[e] that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way.'" *Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, No. 3:12-cv-220 WWE, 2012 WL 3113162, at *1 (D. Conn. July 31, 2012) (citing Fed. R. Civ. P. 26(c)(1)(G)).

In *Powerweb Energy*, Judge Fitzsimmons granted a similar request for a protective order. *Id.* Specifically, the defendants in that case sought a "protective order that would require plaintiff to identify with reasonable specificity the trade secrets that form the basis of its trade secrets claim, prior to receiving defendants' discovery production." *Id.* In considering their motion, Judge Fitzsimmons first discussed the "unique challenge trade secret cases pose to the timing and scope of discovery" and the competing policies supporting early or late identification of trade secrets. *Id.* (citing *DeRubeis*, 244 F.R.D. at 679-80). Supporting late identification, courts have highlighted a plaintiff's broad right to discovery and that a plaintiff may not know what trade secrets have been misappropriated until it receives discovery. *DeRubeis*, 244 F.R.D. at 680. On the other hand, requiring the plaintiff to first sufficiently identify its trade secrets "helps the court to determine the outer permissible bounds of discovery," "prevents needless exposure of the defendants' trade secrets," and ensures that the plaintiff will not "mold its cause of action around the discovery it receives." *Id.* at 680-81. Furthermore, it can be difficult "for the defendant to mount a defense until it has some indication of the trade secrets allegedly misappropriated." *Id.* at 681. Balancing these competing interests, Judge Fitzsimmons concluded that the defendants were "entitled to an

explanation of plaintiff's theory of the case before plaintiff gets the benefit of defendants' discovery." *Powerweb*, 2012 WL 3113162, at *1.

Applying these competing considerations to this case, the court comes to the same conclusion. For example, one of the factors supporting a late identification of trade secrets is that plaintiffs often have no way of knowing what trade secrets have been misappropriated until discovery is received. *DeRubeis*, 244 F.R.D. at 680. In this case, however, Success has specifically alleged that CRS made over fifty changes to its software based on trade secrets that Success provided. (Second Am. Compl., ECF No. 27, ¶¶ 51, 81-82.) The Court finds good cause to shield CRS from responding to Success's requests until Success first describes with reasonable specificity the trade secrets that form the basis of its claim. The motion for a protective order is therefore **GRANTED**. CRS need not respond to Success's Requests for Production Nos. 9, 16, 19-21, 23, 24, and 28 until Success complies with this Court's Order to respond fully to Interrogatories 9, 10, 11, and 17.

3. **Motion for An Award of Fees and Costs**

Finally, CRS requests an award of fees and costs. (Motion at 28-30.) "Where, as here, a court grants a motion to compel only in part, requests for awards of expenses are governed by Rule 37(a)(5)(C)." *Huseby II*, 2021 WL 3206776, at *16. "That rule provides that 'if the motion is granted in part and denied in part, the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.'" *Id.* (quoting Fed. R. Civ. P. 37(a)(5)(C)) (brackets omitted). "As the use of the word 'may' suggests, the decision whether to award fees is within the Court's discretion." *Id.* (citing *Huminski v. Stop & Shop Supermarket Co.*, No. 3:16-cv-1136 (RNC) (DFM), 2017 WL 2779468, at *2 (D. Conn. June 27, 2017). Courts have, for example, declined to award fees "where . . . the results of the requesting party's motion were

'mixed.'" *Id.* (citing *S.C. Johnson & Son, Inc. v. Henkel Corp.*, No. 3:19-cv-00805 (AVC) (SALM), 2020 WL 5640528, at *12 (D. Conn. Sept. 22, 2020); and *Safeplan Platform Sys., Inc. v. EZ Access, Inc.*, No. 06-cv-00726A (HBS), 2011 WL 7473467, at *5 (W.D.N.Y. Dec. 30, 2011)). "Courts have also declined to award expenses where 'both the Plaintiff and the Defendant contributed to the inevitability of the motion to compel.'" *Id.* (quoting *Purugganan v. AFC Franchising, LLC*, No. 3:20-cv-00360 (KAD), 2020 WL 4818362, at *5 (D. Conn. Aug. 17, 2020)).

Success opposes CRS's request principally on the ground that the Motion was "premature." (Opp'n, at 16-17.) To evaluate this contention, a review of the timeline is in order. CRS served its interrogatories and requests for production a year ago, on March 8, 2022. (Reply at 3.) Success served its responses and objections on May 5, 2022. (Opp'n at 5.) CRS's counsel complained about the sufficiency of those responses on May 31, 2022 (Ex. 6 to Motion) (letter of H. Pfutzenreuter to N. Zezula, May 31, 2022), and Success served amended responses on June 28, 2022. (Opp'n at 6.) When CRS complained about *those* responses, Success's counsel suggested that the parties put their discovery disputes on hold until a pending motion to dismiss and motion to transfer had been decided. (Decl. of N. Zezula, ECF No. 81-1, ¶ 14) (recounting August 24, 2022 phone call with CRS's counsel). Success claims that CRS accepted this suggestion (*id.*, ¶ 17), but CRS evidently disagrees. (Reply, at 10) (stating that, rather than agreeing to stay the resolution of discovery disputes, CRS obtained Success's promise to cure the deficiencies). In any event, whether rightly or wrongly, Success apparently believed that the parties had yet to reach impasse when CRS filed its motion to compel on November 22, 2023. (Opp'n at 16-17.) Success therefore says that CRS's Motion was "premature," and that its request for an award of fees and costs should be denied accordingly. (*Id.*)

This timeline does not, however, explain Success's continued resistance after November 22, 2022. "After that date," Success "could have been under no illusion that the parties were still negotiating or that they had not reached impasse." *Huseby I*, 2021 WL 723319, at *5. Yet Success still withheld essential information on at least seventeen of its "over fifty" allegedly purloined trade secrets, and on at least some claimed instances of defamation; CRS had to see its Motion through to conclusion to obtain those basic items. (*See* discussion, § 1 *supra*.) And after November 22, Success persisted in some basic discovery errors, including persisting in its claim that it could invoke Rule 33(d) without specifying responsive documents. Under these circumstances, it is appropriate to require Success to pay the reasonable costs that CRS incurred after November 22, 2022 in obtaining the relief granted herein. *See Huseby I*, 2021 WL 723319, at *5 (allowing moving party to recover fees incurred after January 12, 2021 but not before).

CRS's motion for an award of fees and costs is therefore **GRANTED IN PART AND DENIED IN PART**. It is granted to the extent that Success shall pay the reasonable costs and fees that CRS incurred after November 22, 2022 in obtaining the foregoing relief, and otherwise denied. The parties are directed to attempt to resolve the amount of fees and costs without Court intervention according to the following procedure. CRS's counsel shall submit an itemized written statement of fees and costs to Success's counsel on or before April 7, 2023. Success's counsel shall respond in writing by April 28, 2023, stating whether Success agrees or objects to each item in the statement; any objections shall be stated with particularity. Counsel shall meet and confer over any objections by May 19, 2023. If this process resolves all issues, counsel shall file a joint notice on the docket to that effect by May 19, 2023. If the parties cannot resolve all issues without Court intervention, CRS may file a fee application on or before May 26, 2023. Success shall file any opposition to the fee application by June 9, 2023.

4. **Conclusion**

For the foregoing reasons, CRS's motion is granted in part and denied in part as set forth above. Except as to the fee issue – which shall be resolved according to the schedule set forth above – to the extent that the motion to compel has been granted, Success's compliance is due by March 22, 2023. D. Conn. L. Civ. R. 37(d).

This is not a recommended ruling. It is a ruling by a Magistrate Judge on a "nondispositive motion[]," D. Conn. L. Civ. R. 72.1(C)(2), and as such it is reviewable pursuant to the "clearly erroneous or contrary to law" statutory standard of review. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. Civ. R. 72.2(b). It is an order of the Court unless reversed or modified upon timely objection under Local Rule 72.2(a).

So ordered this 8th day of March, 2023, at Hartford, Connecticut.

*/s/ Thomas O. Farrish*
Thomas O. Farrish
United States Magistrate Judge